UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

```
ELIZABETH JOYCE,                         :
                                         :CIVIL ACTION NO. 3:12-CV-1124
        Plaintiff,                       :
                                         :(JUDGE CONABOY)
        v.                               :
                                         :
TAYLOR HEALTH AND REHABILITATION         :
CENTER, LLC, d/b/a RIVERSIDE             :
REHABILITATION & NURSING CENTER          :
f/k/a TAYLOR NURSING AND REHAB           :
CENTER,                                  :
                                         :
        Defendant.                       :
                                         :
```

___

### **MEMORANDUM**

Here we consider Defendant's Motion for Summary Judgment (Doc. 32) filed on December 13, 2013.  With this motion, Defendant seeks judgment in its favor on the two claims contained in Plaintiff's Complaint (Doc. 1): Count I for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and Count II for age discrimination under the Pennsylvania Human Relations Act ("PHRA").  (Doc. 32.)  For the reasons discussed below, we conclude the motion is properly granted.

### **I. Background**[1]

Plaintiff was employed by Defendant in the position of

___

[1] The factual information contained in this section of the Memorandum is primarily derived from the parties' statements of material facts (Docs. 33, 39).  Pursuant to Local Rule 56.1 of the Local Rules of Court of the Middle District of Pennsylvania, statements are to include references to the parts of the record that support the statement.  Responsive statements by the nonmoving party not so supported are deemed admitted.  In many instances, Plaintiff does not adhere to the requirements of Local Rule 56.1. (*See* Doc. 39.)  We have liberally construed the rule, but in some cases Plaintiff's noncompliant responses result in Defendant's statement being deemed admitted.

Licensed Practical Nurse ("LPN") from November 1992 through July 20, 2010. (Doc. 33 ¶¶ 1-2; Doc. 39 ¶¶ 1-2.) She was a member of the Union. (Doc. 33 ¶ 46.)

Plaintiff was born on June 28, 1957, and was fifty-three years old when she was discharged. (Doc. 33 ¶¶ 3-4; Doc. 39 ¶¶ 3-4.) Plaintiff first worked night shift on the first floor caring for patients. (Doc. 33 ¶ 5; Doc. 39 ¶ 5.) She then worked as a floater between the second and third floors and was working day shift on the third floor at the time of her discharge. (Doc. 33 ¶¶ 6-7; Doc. 39 ¶¶ 6-7.) Plaintiff was responsible for approximately thirty residents with duties including passing medications, taking care of orders, supervising CNAs, performing treatments, checking labs and urines and ensuring that residents received nourishment. (Doc. 33 ¶¶ 8-9; Doc. 39 ¶¶ 8-9.)

At the time Plaintiff was discharged, Joan Hanlon was Director of Nursing and Rob Nealon was the Administrator of the facility. (Doc. 33 ¶¶ 11-12; Doc. 39 ¶¶ 11-12.) Defendant was then considered a "special focus facility," generally not considered a positive designation and one which resulted in heightened scrutiny by the Commonwealth of Pennsylvania Department of Health. (Doc. 33 ¶¶ 13-15; Doc. 39 ¶¶ 13-15.) Joan Hanlon and Rob Nealon were responsible for addressing issues at the facility which led to the "special focus facility" designation. (Doc. 33 ¶ 16; Doc. 39 ¶ 16.)

Defendant had a Corrective Discipline System in place which was progressive in nature.  (Doc. 33 ¶ 17.)  Defendant avers that Plaintiff had been given an Employee Handbook and knew there was a Corrective Discipline System.  (Doc. 33 ¶ 18.)  Plaintiff maintains she was not given an employee handbook or in-service training on disciplinary issues.  (Doc. 39 ¶ 17.)

Defendant states that Plaintiff was issued at least eleven disciplinary actions between August 7, 1995, and July 20, 2010.  (Doc. 33 ¶ 21.)  Plaintiff states that she testified in another lawsuit ("the Judy Dervas lawsuit") that in the twenty years she was employed she was never written up other than for one day being late due to a snowstorm and all of the discipline imposed on her was imposed in the one year prior to her termination.  (Doc. 39 ¶ 19.)

Defendant maintains that Plaintiff was terminated under the Corrective Disciplinary System as a result of two disciplines issued on July 20, 2010, for performing treatments in public areas.  (Doc. 33 ¶ 22.)  Plaintiff denies this, referencing the pretextual nature of the reasons provided.  (Doc. 39 ¶ 22.)  Defendant avers that performing a treatment on a resident in a public area is the type of infraction that would contribute to a facility being designated as a "special focus facility"; Plaintiff states that Defendant cannot produce evidence that Plaintiff performing treatments in public areas had any effect on the classification as

3

a "special focus facility." (Doc. 33 ¶ 23; Doc. 39 ¶ 23.) Plaintiff also cites the statement made by Joan Hanlon at her deposition that she would have terminated Plaintiff even without the "special focus facility" designation. (Doc. 39 ¶ 23.)

The first treatment which resulted in the July 20th discipline was administered by Plaintiff on July 19, 2010, in a hallway of the facility. (Doc. 33 ¶ 24.) On the same date, Plaintiff was educated regarding proper treatment administration relating to performing treatments in public areas. (Doc. 33 ¶ 25.) Defendant avers that the next day Plaintiff performed another treatment on a resident in a public area; Plaintiff admits to performing the treatment but maintains she performed the treatment in the medication room with the resident's foot in that area. (Doc. 33 ¶¶ 28-29.) Plaintiff acknowledges that the medication room would have been too small to close the door while performing the treatment. (Doc. 33 ¶ 32.) The medication room is not a private area and treatments are not permitted in the room as anyone can see into it. (Doc. 33 ¶ 34.)

Plaintiff admits no one at the facility ever made negative comments about her age and the facility "relied an awful lot on the older workers that were there." (Doc. 33 ¶¶ 38-39.) As of the date of discharge--July 20, 2010--Defendant employed twenty-five others as LPNs, ten of whom were the same age or older than Plaintiff. (Doc. 33 ¶¶ 40-41.) Nineteen of the twenty-five

4

qualified for protection under the ADEA.  (Doc. 33 ¶ 42.)  Between July 20, 2010, and July 21, 2011, Defendant hired thirty-seven individuals in the position of Licensed Practical Nurse, eleven of whom were the same age or older than Plaintiff and twenty-two qualified for protection under the ADEA.  (Doc. 33 ¶¶ 43-45.)

Plaintiff filed her Complaint on June 13, 2012.  The Complaint contains two counts: Count I for age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, et seq., and Count II for age discrimination under the Pennsylvania Human Relations Act ("PHRA").  Defendant filed the motion under consideration here on December 13, 2013, accompanied by Defendant's Concise Statement of Material Facts (Doc. 33).  Defendant filed its supporting brief (Doc. 34) on December 27, 2013.  Plaintiff filed her opposition brief (Doc. 38) and response to the Defendant's statement of facts (Doc. 39) on January 21, 2014.  Defendant filed its reply brief (Doc. 44) on February 4, 2013.  Therefore, this matter is fully briefed and ripe for disposition.

## II. Discussion

### A.  *Summary Judgment Standard*

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324.

6

Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff. *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

### B.     *Defendant's Motion*

With this motion, Defendant identifies five specific issues which indicate it is entitled to summary judgment: 1) Plaintiff fails her prima facie burden because she was not replaced by a sufficiently younger individual; 2) Defendant articulated a legitimate non-discriminatory reason for Plaintiff's discharge; 3) Plaintiff does not present evidence that would permit a jury to find pretext; 4) Plaintiff's age was not the "but for" cause of her discharge; 5) punitive damages are not recoverable under the ADEA and PHRA. (Doc. 34 at 8-9.) We will first set out the legal framework within which Plaintiff's claims are to be evaluated and then address each of the pertinent issues identified.

Essentially the same analysis applies to age discrimination claims brought under the ADEA and PHRA. *Glanzman v. Metro. Mgmt.*

7

*Corp.*, 391 F.3d 506, 509 n.2 (3d Cir. 2004).  The ADEA makes it unlawful for an employer to discriminate against any individual in hiring, termination, compensation, or conditions of employment on the basis of the individual's age.  29 U.S.C. § 623(a)(1).  Where the plaintiff lacks direct evidence of discrimination, an ADEA claim is evaluated under the burden-shifting framework for Title VII cases outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).  This framework places the initial burden on the plaintiff to establish a prima face case of discrimination.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

To establish a prima facie case of age discrimination, a plaintiff must show the following: "(1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and 4) she was ultimately replaced by another employee who was sufficiently younger to permit an inference of discriminatory animus."  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *see also Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997).

If the plaintiff succeeds in establishing a prima facie case, step two is reached.  At step two

> [t]he burden of production (but not the
> burden of persuasion) shifts to the
> defendant, who must then offer evidence that
> is sufficient, if believed, to support a

8

> finding that it had a legitimate, nondiscriminatory reason for the discharge. If the defendant cannot satisfy this burden, judgment must be entered for the plaintiff. On the other hand, if the defendant does satisfy this burden, step three is reached.

*Keller*, 130 F.3d at 1108 (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506-07, 509 (1993)).

*Keller* explains that the plaintiff may then survive summary judgment "by submitting evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Keller,* 130 F.3d at 1108 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)).

*Keller* then sets out the requirements for satisfying the first prong of the pretext analysis. *Id.*

> "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent. Rather, the nonmoving plaintiff must demonstrate such weaknesses implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." [*Fuentes* 32 F.3d] at 765. As another court of appeals has put it, "federal courts are not arbitral boards ruling on the strength of 'cause' for discharge. The question is not whether the employer made the best, or even a sound, business decision; it

9

>           is whether the real reason is
>           [discrimination]." *Carson v. Bethlehem Steel
>           Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).

130 F.3d at 1108-09.

Under the second *Fuentes* prong, the plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Keller*, 130 F.3d at 1111 (quoting *Fuentes*, 32 F.3d at 762).[2]

1. **Plaintiff's Prima Facie Case**

Defendant first argues Plaintiff cannot make out her prima facie case because she was not replaced by a "sufficiently younger"

---

[2] In *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009), the Court considered whether the ADEA allowed a mixed motive claim (where a plaintiff claims that she was treated adversely because of both permissible and impermissible reasons) and concluded the statutory text of the ADEA does not authorize mixed motives age discrimination claims. 557 U.S. at 171, 175. Thus, to establish a disparate treatment claim under the ADEA, a plaintiff must prove that age was the "but-for" cause of the employer's adverse action. *Id.* at 176. As stated by the Third Circuit Court of Appeals, *Gross* construed the ADEA's statutory language "as requiring the plaintiff to prove but-for causation from the outset of an ADEA case." *Smith*, 589 F.3d at 690 (citing *Gross*, 557 U.S. at 177-78). This standard does not "require that age discrimination be the sole cause for an adverse employment decision to prevail on an age discrimination claim." *Robinson v. City of Philadelphia*, 491 F. App'x 295, 299 (3d Cir. 2012) (not precedential) (citing *Miller v. CIGNA Corp.*, 47 F.3d 586, 588 (3d Cir. 1995)).

*Smith* clarified that, following *Gross*, the *McDonnell Douglas* framework can still be used to analyze ADEA claims based on circumstantial evidence. 589 F.3d at 691.

10

person.  (Doc. 34 at 15.)  We conclude that Plaintiff has not met her burden on this issue.

Defendants assert that Plaintiff's job duties were completed by existing staff members, including those who were older than Plaintiff, and by staff members hired after her termination, many of whom were older.  (Doc. 34 at 18.)  At the time of her discharge, Defendant asserts there were twenty-five other LPNs ranging in age from twenty-four to sixty-five, ten of whom were the same age or older than Plaintiff.  (Doc. 34 at 16-17.)  The statistical evidence also shows that Defendant hired sixteen LPNs in 2010 following Plaintiff's termination.  (Doc. 34 at 17-18.)  Eight were in the protected age category, ranging in age from forty-five to sixty-four.  (*Id.*)  Eight were under forty, ranging in age from twenty-one to thirty-eight, and the first two hired after Plaintiff's discharge on July 10, 2010, were twenty-five-year-old Brandon Billings on August 3, 2010, and sixty-four-year-old Mary Beth Hart on August 17, 2010.  (*Id.*)  Looking at the twelve-month period following Plaintiff's termination, of the thirty-seven LPNs hired, eleven were the same age or older than Plaintiff and twenty-two were in the protected age category.  (Id.)

On the issue of whether Plaintiff was replaced by a person "sufficiently younger," Plaintiff argues that Defendant's own data belies their assertion that she cannot satisfy this element of her prima facie case.  (Doc. 38 at 3.)  Plaintiff points to six

11

individuals ranging in age from twenty-one to thirty-eight hired by Defendant between August 3, 2010, and October 12, 2010.  (Doc. 38 at 3-4.)  Plaintiff's only other specific argument on the "sufficiently younger" issue is that because the first person hired after her termination was twenty-five-year-old Brandon Billings, "[i]t is clearly a question for the jury to determine whether or not Brandon Billings was the person hired to replace Plaintiff." (Doc. 38 at 4.)

First, we note that Plaintiff presents no evidence that Brandon Billings or any of the identified younger individuals hired in August, September, and October of 2010 replaced Plaintiff. Plaintiff does not refute Defendant's argument that her job duties were completed by many other LPNs, some older and some younger, and some who were employed at the time of Plaintiff's termination and others hired after (*see* Doc. 34 at 18).  Plaintiff does not refute Defendant's outline of the general staffing and scheduling needs of skilled nursing facilities (*see* Doc. 34 at 15).  Moreover, the data cited by Plaintiff does not reflect the ages of LPNs hired in August, September, and October 2010.  In addition to the six younger individuals identified by Plaintiff, four individuals in the protected age category were also hired: sixty-four-year-old Mary Beth Heal on August 17, 2010; fifty-seven-year-old Wanda Brown on September 28, 2010; forty-eight-year-old Michele Pulli on September 28, 2010; and fifty-year-old Mary Kurovsky on October 26,

12

2010.  (Doc. 34 at 17-18.)  As noted previously, Defendant hired sixteen LPNs in 2010 following Plaintiff's termination, eight of whom were in the protected age category, ranging in age from forty-five to sixty-four and eight were under forty, ranging in age from twenty-one to thirty-eight, and the first two hired after Plaintiff's discharge on July 10, 2010, were twenty-five-year-old Brandon Billings on August 3, 2010, and sixty-four-year-old Mary Beth Hart on August 17, 2010.  (Doc. 34 at 17-18.)  Looking at the twelve-month period following Plaintiff's termination, of the thirty-seven LPNs hired, eleven were the same age or older than Plaintiff and twenty-two were in the protected age category.  (*Id.*)

In the circumstances of this case, it is clearly not enough to assert only that the younger age of the person hired closest in proximity to the time of Plaintiff's termination presents a genuine issue of material fact precluding summary judgment.  In light of the unrefuted evidence reviewed above and Plaintiff's failure to present evidence in support of her assertions, no reasonable juror could conclude that Plaintiff meets her burden of showing that "she was ultimately replaced by another employee who was sufficiently younger to permit an inference of discriminatory animus." *Burton*, 707 F.3d at 426.  Because a reasonable juror could not conclude on the evidence presented that Plaintiff has satisfied this element of her prima facie case, Plaintiff's prima facie case fails and Defendant is entitled to summary judgment in its favor.

13

Despite this conclusion, in an abundance of caution we will review Plaintiff's argument that Defendant's motion should be denied because she has provided evidence of pretext.  (Doc. 38 at 7.)

2. **Pretext for Discrimination**

Plaintiff maintains that the evidentiary record does not "alter or change the pretextual nature of the Plaintiff's termination."  (Doc. 38 at 8.)  We conclude that Plaintiff has not met her burden at this third stage of the *McDonnell Douglas* framework.

In support of her argument that Defendant's proffered reason for her termination was pretextual, Plaintiff states that the reasons proffered for the termination were highly subjective. (Doc. 38 at 7.)  She adds that "[e]ighteen years of solid and relatively unblemished performance is an overriding factor that augurs in Plaintiff's favor," citing *Fowler v. C&C Cola*, 868 F.2d 59, 64 (3d Cir. 1989), for the proposition that "subjective evaluations 'are more susceptible of abuse and more likely to mask pretext.'"  (Doc. 38 at 7.)  Plaintiff summarizes her position as follows:  "In sum, a long-term, highly respected senior nurse was terminated on flimsy grounds.  She had no real warning, no real progressive discipline, nothing much to guide her.  Defendant has a progressive discipline policy but it was not afforded to Plaintiffs [sic] prior to their termination."  (Doc. 38 at 8.)

14

Assuming *arguendo* that Plaintiff seeks to defeat summary judgment under the first prong of the *Fuentes* test, Plaintiff must produce evidence from which a factfinder could reasonably "disbelieve the employer's articulated legitimate reasons." *Fuentes*, 32 F.3d at 763. Plaintiff has failed to satisfy the requisite standard in that she has not "demonstrate[d] such weaknesses implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Fuentes* 32 F.3d at 765.

Defendant states that "Plaintiff was discharged for violations of the Corrective Discipline System, specifically: willful failure to carry out orders and continued inability or refusal to meet standards of performance, violations which are identified as 'critical' in nature and result in immediate termination of employment." (Doc. 34 at 19.) Defendant further explains that

> Plaintiff was legitimately discharged for committing a "critical" violation on July 29, 2010 under the Corrective Discipline System. Plaintiff had been advised on July 19, 2010 of the need to insure privacy when completing medical treatments on nursing home residents. Residents of nursing facilities have certain guaranteed rights under federal and state law. Among those are the right to be treated with dignity and respect, and the right to privacy of self and possessions. Violations of resident rights jeopardize the ongoing operations and licensure of the nursing facility and could result in loss of license or participation in federal and state programs. Plaintiff's actions, not only

15

> violated the privacy of a facility resident but also placed the facility at risk during the "special focus" period where operations were already under enhanced scrutiny.

(Doc. 34 at 22.)

Plaintiff does not elaborate on the assertion that she had a "relatively unblemished performance" (Doc. 38 at 7) or present any citation to the record in support of her statement.  Similarly, Plaintiff provides no support for her assertions that she had "no real warning, no real progressive discipline, nothing much to guide her" and that "Defendant has a progressive discipline policy but it was not afforded to Plaintiffs [sic] prior to their termination" (Doc. 38 at 8).  Plaintiff does not apply the facts of this case to the *Fuentes*, or any other, standard.  She provides several citations to case law regarding the third stage of the *McDonnell Douglas* analysis (Doc. 38 at 7-8), but does not analogize her case to those presented.  (*Id.*)  Furthermore, record evidence shows that Plaintiff received many disciplinary actions--contradicting her assertion that termination in the face of her "relatively unblemished performance" is evidence of pretext.  (*See* Doc. 33-8.)

Plaintiff admits to performing treatments in the areas identified by Defendant.  (Doc. 33 ¶¶ 25-37; Doc. 39 ¶¶ 25-37.) She does not refute the sequence of events set out by Defendant, that the violations were "critical" and could lead to immediate discharge, or that the violations violated the privacy of a facility resident *and* presented a risk to the facility during the

16

"special focus" period. (*See* Doc. 34 at 19, 22.)   Without more, Plaintiff's assertions that she "had no real warning, no real progressive discipline, nothing much to guide her" (Doc. 38 at 8) do nothing to cast doubt on Defendant's proffered reason for termination.  Similarly, Plaintiff's totally unsupported assertion that Defendant has a progressive discipline policy which was not afforded her prior to termination (Doc. 38 at 8) cannot be considered evidence of record which would support her claim of pretext.  Thus, we conclude Plaintiff has failed to satisfy her burden of providing evidence from which a reasonable juror could conclude Defendant's reason for terminating Plaintiff was pretext under the first prong of the *Fuentes* test.

If we were to assume that Plaintiff's assertions are intended to satisfy the second prong of the *Fuentes* test, the same conclusion is warranted.  Under the second *Fuentes* prong, the plaintiff "must identify evidence in the summary judgment record that 'allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'"  *Keller*, 130 F.3d at 1111 (quoting *Fuentes*, 32 F.3d at 762).  Plaintiff's failure to cite the record sinks any contention that her assertions would allow a factfinder to infer that Plaintiff's age was more likely than not a motivating or determinative factor in Defendant's decision to terminate her. Furthermore, the requirements of this prong of the *Fuentes* test

17

would be particularly difficult to satisfy in this case given the data provided by Defendant concerning the ages of its LPN employees at the time Plaintiff was terminated and the ages of those hired in the following year.

Because Plaintiff has not produced the requisite evidence under either prong of the *Fuentes* test, she has not met her burden at step three of the *McDonnell Douglas* analysis.  Therefore, even if we had found that Plaintiff satisfied the elements of her prima facie case, we would conclude that summary judgment is proper because she has not met her burden at the third stage of the analysis.

In that Plaintiff recognizes the analysis set out above applies to her PHRA claim (Doc. 38 at 9), we need not discuss that claim separately.  For the same reasons summary judgment is appropriate on Plaintiff's ADEA claim, judgment in Defendant's favor on Plaintiff's PHRA claim is appropriate.

### III. Conclusion

For the reasons discussed above, Defendant's Motion for Summary Judgment (Doc. 32) is granted.  Judgement is entered in Defendant's favor on both Counts contained in Plaintiff's Complaint (Doc. 1) and the Clerk of Court will be directed to close this case.  An appropriate Order is filed simultaneously with this action.

                                    S/Richard P. Conaboy
                                    RICHARD P. CONABOY
                                    United States District Judge

DATED: February 28, 2014